GEORGE C. DIEHL, Plaintiff, *v.* WILLIAM O'DWYER et al., Defendants.

Supreme Court, Special Term, New York County, November 22, 1948.

*Ira S. Robbins* for plaintiff.

*John P. McGrath, Corporation Counsel (Charles F. Preusse* and *Pauline K. Berger* of counsel), for defendants.

HOFSTADTER, J. In this taxpayer's action the plaintiff seeks injunctive relief and a declaratory judgment. The litigation presents the important question whether the City of New York may charge against the additional 2% debt limit for low rent housing and incidental facilities permitted by article XVIII of the State Constitution indebtedness incurred by it to acquire sites and to construct public schools thereon and to modernize public schools, which serve the residents of housing projects.

In 1938, by vote of the people, article XVIII of the Constitution was adopted. So far as here material, the article provides as follows:

" [*Housing for persons of low income; slum clearance.*] Section 1. Subject to the provisions of this article, the legislature may provide in such manner, by such means and upon such terms and conditions as it may prescribe for low rent housing for persons of low income as defined by law, or for the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas, or for both such purposes, and for recreational and other facilities incidental or appurtenant thereto."

" [*Powers of cities, towns and villages to contract indebtedness in aid of low rent housing and slum clearance projects; restrictions thereon.*] § 4. To effectuate any of the purposes of this article, the legislature may authorize any city, town or village to contract indebtedness to an amount which shall not exceed two per centum of the average assessed valuation of the

real estate of such city, town or village subject to taxation, as determined by the last completed assessment roll and the four preceding assessment rolls of such city, town or village, for city, town or village taxes prior to the contracting of such indebtedness. \* \* \* Indebtedness contracted pursuant to this article shall be excluded in ascertaining the power of a city otherwise to create indebtedness under any other section of this constitution.''

To implement article XVIII of the Constitution the Legislature in 1939 (L. 1939, ch. 808) enacted the Public Housing Law. Subdivision 13 of section 3 of this law thus defines a plan: '' \* \* \* a plan or undertaking for the clearance, replanning and reconstruction or rehabilitation of a substandard and insanitary area or areas and for recreational and other facilities incidental or appurtenant thereto to effectuate the purposes of article eighteen of the constitution or any other provision of the constitution delegating any similar power or providing homes for persons of low income.''

By subdivision 14 of the same section a project is defined as: '' \* \* \* a specific work or improvement to effectuate all or any part of a plan. The term shall include the lands, buildings and improvements acquired, owned, constructed, managed or operated hereunder, to provide dwelling accommodations for persons of low income, and such stores, office and other non-housing facilities as well as social, recreational or communal facilities, as may be deemed by the authority or municipality to be incidental or appurtenant to a project.''

It becomes apparent at once that the critical words both in the Constitution and in the Public Housing Law are '' recreational and other facilities incidental or appurtenant thereto.''

Before taking up the basic contentions of the parties a brief statement of the facts out of which this litigation arises will be appropriate. The city's 1948 capital budget contains items aggregating $13,820,000 for the modernization of various public schools, and the acquisition of sites and the construction thereon of seven public schools. The funds for these items are to be raised by use of the additional 2% debt limit for public housing permitted by the Constitution, the Public Housing Law and section 150.00 of the Local Finance Law, instead of within the city's general 10% debt limit. One of the schools so to be built is Public School 111 in the borough of Queens, near '' Queensbridge Houses ''. '' Queensbridge Houses '' is a public housing development constructed, owned and operated by the New York City Housing Authority. It is a Federally aided project, having

been erected pursuant to a loan and subsidy contract dated August 21, 1938, with the United States Housing Authority. Construction began in 1938 and was legally completed March 15, 1940, at a total development cost, including parks and playgrounds of $13,219,823. The total estimated cost of Public School 111 is $1,990,099, of which, according to the capital budget $1,900,000 is to be charged against the housing debt limit. The board of estimate has already authorized the incurrence of indebtedness and the issuance of bonds and capital notes for the acquisition of the site and the construction of Public School 111. This is the only one of the seven schools enumerated in the 1948 capital budget above referred to for which any similar authorization has as yet been made by the board of estimate.

These seven schools, the cost of which the 1948 capital budget proposes to charge against the housing debt limit appeared in capital budgets of prior years, and in these earlier budgets their cost was chargeable against the city's general, not the special 2% housing debt limit. The city, while maintaining that this change of policy is impervious to legal attack acknowledges frankly that the change is due to other demands which render the funds available within its 10% debt limit insufficient to meet the school needs of public housing projects and those of other areas in the city. Of course, this motivation cannot affect the decision of any question of law.

Two applications are now before the court: (1) the plaintiff's motion for an injunction during the pendency of the action and (2) the defendants' cross motion for summary judgment, dismissing the complaint. The plaintiff counters with a prayer pursuant to rule 113 of the Rules of Civil Practice for final judgment in his favor.

The motion for an injunction must be denied because, as will appear, the plaintiff's ultimate right to a permanent injunction is not clearly established and there is shown no immediate danger of waste or other injury requiring the interposition of the court at this time.

The defendants at the outset challenge the plaintiff's right to maintain an action for a declaratory judgment. They assert that, whether the debt incurred for these schools is charged against the general 10% debt limit or the special 2% housing debt limit, the moneys are in any case being used for a public purpose, that there is no present danger of exceeding either the 10% or the 2% limit and that the determination to charge the indebtedness for the schools and more immediately for Public

School 111, if erroneous, may be reviewed in a proceeding instituted under article 78 of the Civil Practice Act to compel the correction of the debt statement filed pursuant to the Local Finance Law. It seems to me, however, that the present is a proper case for a declaratory judgment. If the 2% housing debt limit is illegally invaded, the funds available for public housing are reduced by the amount of the unlawful invasion. It is a matter of public concern and in the public interest that if there is an attempted encroachment on the housing debt limit, forbidden by law, the attempt should be arrested promptly. In my opinion, therefore, this action for a declaratory judgment is maintainable in the circumstances here shown. (*Cottrell* v. *Board of Education of City of N. Y.*, 181 Misc. 645, 650, affd. 267 App. Div. 817, affd. 293 N. Y. 792; *Nelson* v. *Board of Higher Education of City of N. Y.*, 263 App. Div. 144, 147, affd. 288 N. Y. 649.)

The plaintiff insists earnestly that the history of public housing in the State, both before and since the adoption of article XVIII of the Constitution, the debates in the constitutional convention, the discussions both in and without the Legislature attendant upon the enactment of the Public Housing Law, and the course hitherto pursued by the city itself with respect to public housing, all require a holding that public schools are not facilities incidental or appurtenant to a public housing project as that phrase is used in the Constitution and in the statute. The plaintiff concedes unreservedly that schools are a necessary adjunct of any well-conceived housing project, but contends that under the housing amendment to the Constitution and the Public Housing Law the city must raise funds for school facilities for housing projects within its general debt limit just as it raises funds for school facilities in other parts of the city. The defendants vigorously resist this contention and argue that it is within the legal competence of the city to determine that Public School 111 is a facility incidental or appurtenant to Queensbridge Houses and that in so determining the city exercises no judicial or quasi-judicial function reviewable by a court except for fraud or illegality.

This opinion would run to inordinate length were the arguments of the parties, based in part on the language of the Constitution and the applicable statutes and in part on the debates and extraneous history already referred to, reviewed here. I have considered them all and have reached the conclusion that the phrase " facilities * * * incidental or appurtenant to a project " may not be held, as advocated by

the plaintiff, to exclude in every case and in all circumstances a public school, so that the city may never resort to the 2% housing debt limit in financing its cost. Unless I can so hold, the plaintiff is not entitled to final judgment on the papers before me. In my opinion, the considerations pressed on me by the plaintiff form too uncertain a basis for whittling down the apparently all-inclusive language of the constitutional amendment.

On the other hand, I find myself unable to accept the defendants' view that the city's determination that a particular school is such a facility and that its cost may be financed through the use of the 2% housing debt limit is beyond judicial scrutiny except for fraud or illegality. It is quite true that once it is found that a given school is a facility incidental or appurtenant to a public housing project within the meaning of the Constitution and the Public Housing Law, it is for the city alone to determine whether its cost should be financed within the general 10% or the special 2% housing debt limit. But, if a given school is not such a facility then there is no lawful warrant for charging its cost against the housing debt limit. In such case there would be a forbidden encroachment on that debt limit; this would constitute an illegality justifying judicial interference.

In my opinion, the question whether Public School 111 is a facility incident or appurtenant to Queensbridge Houses cannot be answered summarily. There are many factual issues which enter into the resolution of the question. Moreover, there is the further issue whether, even if this school may be regarded as such a facility, the defendants have complied with the requirements of the Public Housing Law. Since all these issues can be disposed of only by a trial, the defendants' motion for summary judgment is denied.